25CA1710 Marriage of Stevens 08-13-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1710
Boulder County District Court No. 12DR48
Honorable Timothy Johnson, Judge

---

In re the Marriage of

Bethany Kay Stevens,

Appellee,

and

John Richard Stevens,

Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE SCHOCK
Welling and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 13, 2026

---

Bethany Kay Stevens, Pro Se

John Richard Stevens, Pro Se

¶ 1    In this post-dissolution of marriage proceeding, John Richard Stevens (father) appeals the district court order modifying parenting time as between him and Bethany Kay Stevens (mother).  He contends, among other things, that the district court improperly relied on the recommendations of a child and family investigator (CFI) and made clearly erroneous factual findings.  We affirm.

## I.    Background

¶ 2    When the parties' marriage was dissolved in 2013, the district court adopted the parties' stipulated parenting plan.  Under that plan, the parties' child lived primarily with father, and mother had parenting time two afternoons a week and every other Saturday.

¶ 3    In 2020, the parties stipulated to an amended parenting plan, which was approved by the court.  That plan established a step-up parenting schedule by which mother could gradually expand her parenting time by meeting certain conditions.

¶ 4    A few years later, mother filed a motion concerning parenting time disputes under section 14-10-129.5, C.R.S. 2025, alleging that father had been withholding parenting time from her by improperly regressing her in the step-up schedule.  After an evidentiary hearing in February 2024, the magistrate agreed and awarded mother

1

twenty-two overnights in makeup parenting time. The magistrate also further amended the parenting plan, giving mother parenting time one afternoon per week and two overnights every other weekend. The order required mother to engage in mental health therapy "as recommended by the therapist" and to notify father if her therapist recommended a reduction in therapy. Father appealed the 2024 parenting time order, and a division of this court affirmed it. *See In re Marriage of Stevens*, (Colo. App. No. 24CA1056, May 1, 2025) (not published pursuant to C.A.R. 35(e)).

¶ 5 A few months after the 2024 parenting time order was entered, mother again moved to modify parenting time, this time proposing a "week on/week off" schedule. Father opposed the modification. The magistrate appointed a CFI to "investigate, report and make recommendations" regarding the best interests of the child. After an investigation that included document review, home visits, and interviews with the parties, the child, and others, the CFI recommended an increase in mother's parenting time and mental health support for both parties. Father moved to set aside the CFI report and appoint a new CFI. The district court denied the motion.

¶ 6    The district court then held an evidentiary hearing on mother's motion and found that a parenting time modification was in the child's best interest.[1]  The court found the CFI credible and adopted her recommendations and analysis.  Under the new parenting time plan, mother has parenting time five overnights every two weeks during the school year and "week on/week off" parenting time over the summer.  The court also ordered both parties to receive mental health support.[2]

## II.    Lack of Findings After June 2024 Hearing

¶ 7    Father first contends that the magistrate erred by failing to make findings after an evidentiary hearing in June 2024 regarding a reduction in mother's therapy.  But because the magistrate did not enter an order after the June 2024 hearing, there is no separate order arising out of that hearing for us to review.

---

[1] Although the hearing was held before a magistrate, the judicial officer was appointed as a district court judge before entering the order and entered the order in his capacity as a district court judge.

[2] Father recently filed a notice of district court proceedings that occurred while this case was on appeal.  Because those proceedings are not part of the record on appeal and were not before the district court at the time of its ruling, we do not consider them.  *See Bd. of Med. Exam'rs v. Duhon,* 867 P.2d 20, 23 (Colo. App. 1993), *aff'd,* 895 P.2d 143 (Colo. 1995).

## A. Additional Background

¶ 8 Under the previous parenting time order, father was entitled to request a hearing if he objected to mother's reduction in therapy. After receiving notice from mother in March 2024 that she would be reducing and eventually ceasing therapy, father requested a hearing. That hearing was held in June 2024. At the conclusion of the hearing, the magistrate took the matter under advisement and ordered mother to continue her current course of therapy in the meantime. The magistrate did not issue a written ruling.

¶ 9 Mother filed her motion to modify parenting time the next month, which led to the parenting time order that is at issue in this appeal. In that order, the district court found that mother "needs continued mental health support" and ordered her to identify a mental health provider who can support her on an "as needed basis." But the court removed any requirement that mother keep father apprised of the nature or frequency of her treatment.

## B. Analysis

¶ 10 We cannot review father's contention that the magistrate failed to make findings after the June 2024 hearing for two reasons.

¶ 11    First, apart from the subsequent parenting time order that is

at issue in this appeal, there is no appealable order for us to review.

Our jurisdiction is limited to the review of final judgments. *In re*

*Marriage of Wiggs*, 2025 COA 10, ¶ 7. And a judgment is not final

until there is a written, dated, and signed order. *In re Marriage of*

*Sorensen*, 166 P.3d 254, 256 (Colo. App. 2007). Thus, because

neither the magistrate nor the district court ever issued a ruling

regarding mother's therapy frequency after the June 2024 hearing,

there is no final appealable order arising out of that hearing for us

to review. *See L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶ 14.

¶ 12    Second, the district court changed mother's therapy

requirements in the subsequent parenting time order. The previous

parenting time order required mother to engage in therapy "as

recommended by the therapist" and to notify father if the therapist

recommended reducing or ending therapy. The current order

requires mother to engage in therapy on an "as needed basis" but

eliminates the notification requirement and father's right to request

a hearing. This new regime makes father's prior objections to

mother's reduction in therapy moot.[3] *See In re Marriage of Wiggins*, 2012 CO 44, ¶ 16 ("[W]here subsequent events cause an issue to become moot, we will decline to entertain the merits of an appeal.").

### III. Motion to Set Aside CFI Report

¶ 13 Father next contends that the district court erred by denying his motion to set aside the CFI report. We are not persuaded.

### A. Applicable Law and Standard of Review

¶ 14 In any domestic relations proceeding that involves the allocation of parental responsibilities, the district court may appoint a CFI to make "independent and informed recommendations to the court" regarding "options that serve the best interests of the child." § 14-10-116.5(1), (2)(b), C.R.S. 2025. The CFI may be an attorney, a mental health professional, or "any other individual with appropriate training and qualifications." § 14-10-116.5(2)(a).

---

[3] Father also asserts that the district court failed to comply with section 14-10-124(9), C.R.S. 2025 (which he refers to as H.B. 24-1350), which generally requires a court to make specific findings before granting unsupervised parenting time to a parent accused of domestic violence. Because father does not sufficiently develop this argument, we do not consider it. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12, *aff'd*, 2021 CO 56.

¶ 15　　The CFI must generally provide a written report and may testify as a court-appointed expert regarding the report.  § 14-10-116.5(2)(b), (c).  In making its determinations, the court "shall consider the entirety of the report, as well as any testimony by the [CFI], the parties, and any other professionals, before adopting any recommendations made by the [CFI]."  § 14-10-116.5(2)(b).

¶ 16　　We review evidentiary rulings, including rulings on the admissibility of expert opinions, for an abuse of discretion.  *Wal-Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶ 7; *Trujillo v. Vail Clinic, Inc.*, 2020 COA 126, ¶ 10.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law.  *Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶ 28.

### B.　　Additional Background

¶ 17　　A few weeks before the hearing on mother's motion to modify parenting time, father moved to set aside the CFI report.  He argued, among other things, that the CFI did not spend enough time interviewing father or the child, did not have sufficient time to review documents, and made several factual errors in her report.

7

¶ 18    The court denied the motion at the beginning of the hearing, concluding that there was "no authority" to support the replacement of the CFI at that stage and that father's arguments went to "the weight of the evidence and not the admissibility."  In its written ruling, the court repeated that father "did not have any legal authority for the [c]ourt to do what [f]ather was requesting" and that his arguments "sounded like information to bring up on cross-examination of the [CFI] rather than excluding their testimony."

## C.    Analysis

¶ 19    We perceive no abuse of discretion in the district court's ruling.  Contrary to father's assertions, the district court did not deny the motion because of a "formatting error."  It did so because father did not provide any legal authority for his position — a point father's counsel acknowledged at the hearing when she said, "We don't have a legal authority."  A party's failure to cite legal authority to support a motion is a proper ground for denial.  *See* C.R.C.P. 121, § 1-15(3) ("If the moving party fails to incorporate legal authority into a written motion, the court may . . . enter an order denying the motion."); *In re Marriage of Snyder*, 701 P.2d 153, 155

(Colo. App. 1985) (holding that district court properly denied motion where movant "did not refer to any legal authority to support" it).

¶ 20 Moreover, a party's disagreements with a CFI's report are not a legal basis to set the report aside. *See In re Parental Responsibilities of M.J.K.*, 200 P.3d 1106, 1114 (Colo. App. 2008) (holding that district court did not err by relying on CFI's recommendations, despite arguments that CFI was biased, based opinions on hearsay, and did not apply the parental presumption); *Farmland Mut. Ins. Cos. v. Chief Indus., Inc.*, 170 P.3d 832, 837 (Colo. App. 2007) (holding that challenge to sufficiency of expert testimony was irrelevant to its admissibility). We agree with the district court that father's challenges to the CFI report went to its weight, not its admissibility, and were appropriately addressed through cross-examination and argument regarding the report's persuasiveness.

## IV. Modification of Parenting Time

¶ 21 Father asserts two primary challenges to the parenting time order. He contends that the district court (1) misconstrued the child's statements regarding his parenting time preferences and (2) improperly allowed the CFI to make psychological recommendations. We discern no reversible error on either point.

## A. Applicable Law and Standard of Review

¶ 22 The district court may modify parenting time whenever doing so would serve the child's best interests. *See* § 14-10-129(1)(a)(I), C.R.S. 2025. In making that determination, the court must consider all relevant factors, one of which is "[t]he wishes of the child if he or she is sufficiently mature to express reasoned and independent preferences as to the parenting time schedule." § 14-10-124(1.5)(a)(II), C.R.S. 2025. The court need not make findings on each statutory factor, so long as its findings are "sufficiently explicit . . . to give the reviewing court a clear understanding of the basis of the order." *In re Marriage of Pawelec*, 2024 COA 107, ¶ 44.

¶ 23 The district court has broad discretion to modify parenting time orders, and we must "exercise every presumption in favor of upholding its decision." *In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 13. We review a parenting time decision for an abuse of discretion, meaning we will reverse only if the decision is manifestly arbitrary, unreasonable, or unfair, or if the court misapplied the law. *Pawelec*, ¶ 45. We review factual findings for clear error and will not disturb them if they have any record support. *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12.

## B. Child's Statement of His Preferences

¶ 24 The CFI report states that the child — who was then about to turn fifteen — "told the CFI that he is fine with the current schedule though he also said that it has been nice having a bit more time with [m]other and that [he] would like to continue to spend some additional time with [m]other." The child also "suggested that there would be advantages and disadvantages to having more time with [m]other or with [f]ather." At the hearing, the CFI testified that the child said "[i]t would be nice to spend more time with [mother]."

¶ 25 In its order, the district court found that the child "state[d] that it would be nice to have more parenting time with [m]other."

¶ 26 Father asserts that the district court's paraphrase of the child's statements in the CFI report was erroneous. Specifically, he contends that the child was expressing a preference for continuing the parenting time order that was then in effect — which had increased mother's parenting time from the previous parenting time order — not for further increasing mother's parenting time.

¶ 27 Although we acknowledge there may be conflicting reasonable interpretations of the child's statements described in the CFI report, the district court's finding was not clearly erroneous for two

11

reasons.  First, the district court could reasonably construe the child's statement that it *had* been nice spending more time with mother to mean that the child desired to have more time with mother going forward.  Second, even if the CFI report does not support the district court's finding, the CFI's testimony — that the child said "[i]t would be nice to spend more time with [mother]" — does.  *See Van Gundy*, ¶ 12 ("A court's factual findings are clearly erroneous only if there is no support for them in the record.").

¶ 28    Moreover, even if the district court clearly erred in describing the child's wishes, we are not persuaded that any error affected the ultimate parenting time determination.  *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties.").  The child's wishes are just one of several factors the court must consider in determining the best interests of the child, *see* § 14-10-124(1.5)(a), and the challenged finding consisted of one sentence in a 22-page, 124-paragraph order.  Given the many other factors considered by the district court

and addressed by the CFI, there is no indication that the child's wishes were *a* — much less *the* — controlling factor.[4]

### C.    CFI's Mental Health Recommendations

¶ 29    Father next contends that the district court erred by allowing the CFI to offer mental health recommendations because she was not a psychologist.  We discern no abuse of discretion.

¶ 30    One factor the court must consider in assessing the best interests of the child is "[t]he mental and physical health of all individuals involved."  § 14-10-124(1.5)(a)(V).  The CFI must also consider this and the other statutory best interest factors.  *See* § 14-10-116.5(2)(a).  But the CFI may not conduct psychological testing.  *See* Chief Justice Directive 04-08, Directive Concerning Court Appointments of Child and Family Investigators Pursuant to Section 14-10-116.5, C.R.S., § VIII(C), Standard 12 (effective Aug. 7, 2024); *see also* § 14-10-116.5(2)(d) (requiring CFI to comply with chief justice directives).

---

[4] To the extent father suggests that the district court did not consider the best interest factors in section 14-10-124(1.5)(a), the court's order makes clear that it did.  The CFI report addressed each factor in detail, and the court adopted and incorporated the CFI's reasoning "as to each of the best interest [factors]."

¶ 31　The CFI did not serve as a psychologist, nor is there any indication that she conducted any psychological testing. Instead, she recommended mental health support for the parents and the child based on her observations and investigation. Specifically, the CFI recommended that (1) the child attend therapy to "better understand[] his own strengths and challenges and . . . work on continuing to individuate from his parents"; (2) mother identify a mental health provider who can support her on an "as needed basis"; and (3) father work with a mental health provider who has "significant experience with high conflict co-parent issues." These recommendations fell squarely within the CFI's charge to consider the mental health of everyone involved. *See* § 14-10-124(1.5)(a)(V).

¶ 32　Father's observation that the CFI was not qualified as a psychologist under section 12-245-303, C.R.S. 2025, is a non sequitur. A CFI may be any individual with "appropriate training and qualifications." § 14-10-116.5(2)(a). And psychologist or not, the CFI is responsible for taking the parties' mental health into account in making their recommendations. *See id.* It was the district court's role — not ours — to determine the weight to be afforded those recommendations. *See M.J.K.*, 200 P.3d at 1114.

14

## V.     Judicial Bias

¶ 33     Finally, father contends for the first time on appeal that the district court "display[ed] a consistent pattern of judicial prejudice against him." Because he did not move to disqualify the judge in the district court, he must show that the judge was actually biased against him. *See Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 52. Actual bias "focuses on the judge's subjective motivations" and exists when, "in all probability, a judge will be unable to deal fairly with a party." *People in Interest of A.P.*, 2022 CO 24, ¶ 28. The record must "clearly demonstrate" that "the judge had a substantial bent of mind against [the party]." *Id.* at ¶ 30 (citation omitted).

¶ 34     Father has not made this showing. The only specific comment father identifies is the court's remark — after mother's counsel accepted the court's invitation to argue sitting down because she "ha[d] heels on and [her] feet hurt" — that "I won't comment about how . . . sexist a lot of shoes are because guys don't have to wear shoes like that. Doesn't make a lot of sense to me." This offhand comment does not show any actual bias against father.

¶ 35     Other than that, father points only to adverse rulings against him — including the district court's credibility findings and various

factual findings with which father disagrees — and some follow-up questions the court asked father during his testimony. But absent "an attitude of hostility or ill will toward a party, a ruling by a judge on a legal issue is insufficient to show [actual] bias." *Bocian*, ¶ 57; *see also A.P.*, ¶ 32 ("[A]dverse legal rulings by a judge are unlikely to provide grounds for a bias claim, as they are proper grounds for appeal, not for recusal."). The instances father identifies are normal parts of judicial proceedings, not evidence of hostility or ill will.

## VI. Appellate Fees and Costs

¶ 36 Father also requests an award of attorney fees, but he does not identify any basis for such an award. We deny his request because (1) he is pro se, *see Smith v. Furlong*, 976 P.2d 889, 890 (Colo. App. 1999); (2) we have ruled against him in this appeal; and (3) he did not include his request under a separate heading or "explain the legal and factual basis" for such an award, C.A.R. 39.1.

¶ 37 Because we affirm the district court's order, we also deny father's request for appellate costs. *See* C.A.R. 39(a)(2).

¶ 38 Mother is entitled to her appellate costs under C.A.R. 39(a)(2) and may pursue such an award in accordance with C.A.R. 39(c).

## VII. Disposition

¶ 39    The order is affirmed.

JUDGE WELLING and JUDGE LUM concur.